UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGAN E. ROBINSON,

    Plaintiff,                                       Civil Action No. 18-CV-12019

vs.                                              HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS

This matter is presently before the Court on cross motions for summary judgment [docket entries 9 and 11]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying her application for social security disability insurance benefits. An Administrative Law Judge ("ALJ") held a hearing in August 2017 (Tr. 29-62) and issued a decision denying benefits in October 2017 (Tr. 7-21). This became defendant's final decision in May 2018 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th

> Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was 37 years old (Tr. 34). She has a high school education and two years of college (Tr. 34) and work experience as a slot machine attendant, a medical lab technician, and financial teller (Tr. 51-52). Plaintiff claims she has been disabled since May 2015 due to multiple sclerosis, headaches, fatigue, and chronic diarrhea (Tr. 33, 226). The ALJ found that plaintiff's severe impairments are "multiple sclerosis with headaches" (Tr. 12) and that her depression (not a condition she mentioned as being a basis for her claim) is non-severe (Tr. 13-14). The ALJ made no findings regarding plaintiff's fatigue or diarrhea.

The ALJ found that despite her impairments plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) except she can frequently, but not constantly, handle, finger, and feel with the bilateral upper extremities. She can frequently, but not constantly, balance and can occasionally stoop, kneel, crouch, and crawl. The claimant can occasionally climb ramps and stairs. She can never

> climb ladders, ropes, or scaffolds and can never be exposed to vibrations, unprotected heights, moving mechanical parts, and extreme heat.

(Tr. 14.) Section 404.1567(a) states:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled, sedentary jobs such as an inspector, assembler, or addresser (Tr. 53-54). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and concluded that she is not disabled (Tr. 20-21).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because his RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing.

Plaintiff's RFC evaluation is flawed for the following reasons. First, the ALJ failed to fully consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, a number of medications, including Vicodin, Norco, Tramadol, Valium, Betaseron, Cymbalta, Baclofen, Ortho Micronor, Vol-Plus, Natalizumab, Gabapentin,

3

Ritalin, Acetaminophen-Hydrocodone, Esgic, Wellbutrin, Questran, Ergocalciferol, Nexium, Lorazepam, Antivert, Naprosyn, Provigil, Tylenol #3, Ultram, Diazepam, Oxycodone, MSM, Methylprednisolone, Cymbalta, and Adderall (Tr. 229, 313, 334, 348, 359, 362-63, 384-85, 388, 433, 475, 481, 516-18, 542, 546-49, 551, 555, 557, 559, 563, 565, 567, 569, 571, 573, 575, 577, 602, 678, 681, 683, 686, 688, 690, 694-96, 705, 729, 733), many of which have known side effects. Plaintiff testified that her medications make her feel tired and jittery (Tr. 47). One of plaintiff's physicians noted that Baclofen "may complicate her already significant problems with fatigue" (Tr. 354). Another physician noted plaintiff's "severe flu-like reactions," including "constant aching [and] fatigue" (Tr. 362). Nurse Stuner identified sedation and fatigue as plaintiff's medication side effects (Tr. 628).

The ALJ failed to acknowledge plaintiff's many medications, and he made no findings regarding the nature and severity of her medication side effects. Indeed, the ALJ appears to have misunderstood plaintiff's testimony on this issue, as he believed "she testified that her medications made her sleepy" (Tr. 13, 15). As noted, Nurse Stuner indicated that plaintiff's medication side effects are sedation and fatigue, and she characterized plaintiff's fatigue as "incapacitating" (Tr. 628, 631). While he made no findings regarding medication side effects, the ALJ asserted that he "considered her fatigue and medication side effects, and precluded her from unprotected heights and moving mechanical parts" (Tr. 19).

The ALJ's failure to make any findings as to this issue is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th

4

Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; adjust his findings as appropriate regarding plaintiff's RFC; and incorporate these findings in proper hypothetical questions to the VE.

Relatedly, even if plaintiff's fatigue is not a medication side effect, the ALJ's RFC assessment is flawed because it failed to incorporate findings regarding the severity of this impairment. Plaintiff testified that she is "tired all the time" (Tr. 44), and on her function report she indicated that she has "a hard time with fatigue" (Tr. 234). Nurse Stuner listed "incapacitating fatigue" among plaintiff's symptoms (Tr. 471, 631), and in her office notes she repeatedly included "chronic fatigue" among plaintiff's symptoms and "chronic fatigue syndrome" among plaintiff's diagnoses (Tr. 387-89, 550-79, 685-93, 727-31). Dr. Dardas noted that plaintiff complained of "significant fatigue" (Tr. 352), and Dr. Kaul noted that plaintiff complained of being "very fatigued in the daytime" (Tr. 433). The ALJ did not acknowledge this evidence, and he made no findings regarding the extent of this potentially disabling impairment,[1] asserting only that he accommodated for it, and for all medication side effects, by "preclud[ing] her from unprotected heights and moving mechanical parts" (Tr. 19). On remand, the ALJ must make findings as to the severity of plaintiff's fatigue, adjust his findings as appropriate regarding plaintiff's RFC, and incorporate these findings in proper hypothetical questions to the VE.

---

[1] Oddly, in contrast, the ALJ spent several paragraphs explaining why plaintiff's optic neuropathy and depression are non-severe (Tr. 12-13), although she does not base her disability claim on either of these impairments.

5

Next, the RFC assessment in this matter is flawed because the ALJ neglected to make findings as to the severity of the numbness in plaintiff's hands and fingers. Plaintiff testified that while working as a bank teller she "was having a problem with my till because I couldn't feel the money so I was off a lot" and that while working as a medical lab technician she "couldn't feel" order slips (Tr. 41). She said she experiences numbness in both hands "all the time" (Tr. 41-42) and on her work activity report she indicated she stopped working as a medical technician because "I was burning myself on the insinerator and not feeling it, dropping dangerous things (dirty needles, scalpels [etc.]) . . . [and] I was missing pages on orders because I couldn't feel them" (Tr. 322). Nurse Stuner characterized the numbness in plaintiff's upper and lower extremities as "severe" (Tr. 315), and in her office notes she repeatedly referred to plaintiff's "decreased sensation in hands and wrists, feet and ankles to sharp touch" (Tr. 387, 550, 552, 554, 556, 558, 560, 562, 564, 566, 568, 570, 572, 575-76, 689, 691, 693). The ALJ appears to have discounted the importance of this symptom because plaintiff's grip strength is good, a fact the ALJ mentioned in his decision no less than thirteen times (Tr. 15-17, 19). Conspicuously absent from the ALJ's decision, however, are findings as to the frequency and severity of plaintiff's hand numbness, and explanations as to why he believes grip strength disproves hand numbness or why he believes this symptom "has been accounted for by limiting her to . . . frequent, but not constant, handling, fingering, and feeling with the bilateral upper extremities" (Tr. 17). On remand, the ALJ must make findings as to the severity of plaintiff's hand numbness, adjust his findings as appropriate regarding plaintiff's RFC, and incorporate these findings in proper hypothetical questions to the VE.

Next, the RFC assessment in this matter is flawed because the ALJ neglected to make findings as to the frequency and severity of plaintiff's headaches. Plaintiff testified that she gets

6

headaches "a lot" (Tr. 45). In her third party function report, plaintiff's mother indicated that plaintiff "has terrible headaches" (Tr. 247). Nurse Stuner has repeatedly noted plaintiff's "constant" or "daily" headaches and has diagnosed "chronic tension type headache" or "migraine headaches" (Tr. 387, 389, 550, 552, 554, 556, 558, 560, 562, 564, 566, 568-70, 572, 574-79, 685-87, 689, 691, 693, 727, 731). Nurse Stuner characterized plaintiff's headaches as chronic, severe ("prevents all activity"), and as occurring three to four times per month and lasting eight hours (Tr. 471, 626). While the ALJ found plaintiff's headaches to be a severe impairment (Tr. 12), he neglected to make any findings as to their frequency or severity, or to include them in his RFC assessment (and in his hypothetical questions to the VE) except to say, quite inexplicably, that he "accounted for her headaches by precluding her from exposure to vibrations" (Tr. 19). The Court has reviewed every page of this voluminous record and can find nothing to suggest that plaintiff's headaches are caused or exacerbated by exposure to vibrations. Rather, the evidence indicates that they are caused by plaintiff's multiple sclerosis (Tr. 627). On remand, the ALJ must make findings as to the frequency and severity of plaintiff's headaches, adjust his findings as appropriate regarding plaintiff's RFC, and incorporate these findings in proper hypothetical questions to the VE.

Next, the RFC assessment in this matter is flawed because the ALJ failed to consider whether plaintiff needs a sit/stand option. Nurse Stuner has opined that plaintiff can sit or stand for thirty minutes at a time, that every thirty minutes she must be allowed to walk around for ten minutes, and that she must be permitted to shift position between sitting, standing, and walking (Tr. 632). The ALJ did not reject these limitations specifically, but he said he gave all of Nurse Stuner's opinions "little weight" because "they are not generally in line with the objective finding [sic] of record, including her own observations" (Tr. 18).

7

The ALJ must provide a more reasoned explanation than this. Nurse Stuner, who has treated plaintiff frequently since at least August 2012, has made findings regarding plaintiff's headaches, dizziness, fatigue, loss of sensation, muscle spasms, and joint pain. The Court is unaware of any contrary evidence, and the ALJ cites none. The ALJ also contends that plaintiff's description of her daily activities is inconsistent with Nurse Stuner's restrictions, but a review of that description does not bear this out. Plaintiff wrote in May 2015 that she can do housework, take her daughter to daycare, go shopping, and feed her dog (Tr. 235-36). But she also wrote that her mother and brother help her with these things, that "sometimes I have to sit in a chair while I'm cooking," and that she does house and yard work "every other day [and] I spread it out throughout the day." *Id.* At the hearing in August 2017, plaintiff testified that she goes grocery shopping with her boyfriend because "if anything happens and I have to sit down, then he's there so he just continues on"; and that she does housework for only five minutes at a time before needing to rest for a while (Tr. 48). There is no apparent inconsistency between plaintiff's description of her daily activities and Nurse Stuner's restrictions. On remand, the ALJ must make findings as to the length of time plaintiff can sit, stand, and walk during an eight-hour work day, and whether she needs to alternate position and, if so, how frequently. These findings must be incorporated into a revised RFC assessment and in hypothetical questions to the VE.

Finally, on remand the ALJ must also reconsider his statement that "[t]he fact that the impairment [multiple sclerosis] did not prevent the claimant from working strongly suggests that it would not currently prevent work" (Tr. 18). Here the ALJ noted that plaintiff was first diagnosed with multiple sclerosis when she was 15 years old. He dismissed "allegations regarding worsening symptoms" by focusing on medical findings that are irrelevant to plaintiff's claim, e.g., strength in

8

her arms and legs, grip strength, normal gait, and no need for a cane (Tr. 19), but neglected to consider the symptoms plaintiff does complaint about, and which are medically documented, e.g., fatigue, headaches, and numbness in her hands. There is no evidence in this record that these latter symptoms were as severe during plaintiff's work career as they are now. On remand the ALJ must consider the symptoms of which plaintiff complains in determining whether plaintiff's multiple sclerosis prevents her from working.

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings to address the deficiencies noted above. This is a sentence four remand under § 405(g).

                                          s/Bernard A. Friedman
Dated: November 9, 2018         BERNARD A. FRIEDMAN
Detroit, Michigan                SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 9, 2018.

             s/Johnetta M. Curry-Williams
             Case Manager